UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY FARRIS, et al., <br>     Plaintiffs, <br> v. <br> 3M COMPANY, et al., <br>     Defendants. | Case No. 18-cv-04186-JST <br><br> **ORDER GRANTING MOTION TO DISMISS** <br> Re: ECF No. 96 |

Before the Court is Defendant Honeywell International Inc.'s motion to dismiss Plaintiffs' fifth cause of action. ECF No. 96. The Court will grant the motion without prejudice.

## I. BACKGROUND

Plaintiff Gary Farris was diagnosed with lung cancer in February 2016 after being previously diagnosed with asbestosis. ECF No. 46 ("Compl.") at 3. Farris identifies three periods of asbestos exposure: 1) working on brakes and clutches in an automotive shop in San Jose, California during the summers from 1960 to 1964 and performing automotive repairs for himself, family, and friends from the 1960s to 1980s; 2) serving in the United States Navy from 1964 to 1967 onboard the USS Waddell; and 3) servicing photocopiers throughout the San Francisco Bay Area from 1967 to 1989. *Id.* at 5-6. Farris and his wife, Melva Farris, bring claims for strict products liability, market-share liability, negligence, and fraud against three groups of defendants: Product Defendants (3M Company; Allied Packing & Supply, Inc.; Air & Liquid Systems Corporation; Carrier Corporation; CBS Corporation; Cla-val Co.; Cleaver-Brooks, Inc.; Copes-Vulcan, Inc.; Crane Co.; Foster Wheeler Energy Corporation; Fraser's Boiler Service, Inc.; General Electric Company; Hennessy Industries, Inc.; IMO Industries, Inc.; Kyocera Corporation; Kyocera International, Inc.; Parker-Hannifin Corporation; Ricoh Company, Ltd.; Ricoh USA, Inc.;

1  Toshiba America, Inc.; Toshiba Corporation; Velan Valve Corp.; Vigor Industrial LLC; Warren
2  Pumps, LLC; and Does One through Two Hundred); Respirator Defendants (3M Company); and
3  Friction Defendants (BorgWarner Morse TEC LLC; Honeywell International Inc.; Maremont
4  Corporation; O'Reilly Auto Enterprises, LLC; and Pneumo Abex, L.L.C.). *See generally id.*

Friction Defendant Honeywell International Inc. ("Honeywell") now moves to dismiss Plaintiffs' fifth cause of action for market-share liability. ECF No. 96. The fifth cause of action alleges that Mr. Farris was injured by exposure to asbestos fibers released from "asbestos-containing motor vehicle friction products that are and were fungible in color, size, shape, texture and function. Said products were indistinct and similar in appearance and composition, and through no fault of the plaintiff these products cannot be traced to a particular defendant or other entity." Compl. at 13. Plaintiffs further allege that they have "joined as defendants a substantial share of the manufacturers and suppliers of the asbestos-containing motor vehicle friction products that comprised the relevant market within which [Mr. Farris] was exposed to asbestos fibers." *Id.* at 14. After promising to prove the respective market share of each defendant at trial, Plaintiffs allege that "[t]he liability of the defendants, and each of them, is proportional to their respective market share percentage." *Id.* Finally, Plaintiffs assert that "the nature and structure of the [relevant] market" is such that "there is and was a substantial likelihood that [Mr. Farris] would have actually used or otherwise been exposed to the asbestos-containing motor vehicle friction products of each of the defendants." *Id.*

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).

In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). If the motion to dismiss is granted, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiffs' fifth cause of action is explicitly based on *Sindell v. Abbott Laboratories*, 26 Cal. 3d 588 (1980) and *Wheeler v. Raybestos-Manhattan*, 8 Cal. App. 4th 1152 (1992). Compl. at 13-14. *Sindell* established a burden-shifting "market-share" theory of tort liability, applicable in cases where a plaintiff has been injured by a defective product, but, through no fault of his or her own, cannot provide evidence of causation. 26 Cal. 3d at 610-11. There, plaintiff developed a malignant bladder tumor due to her mother's consumption of diethylstilbestrol ("DES"), a carcinogenic anti-miscarriage drug, while plaintiff was in utero. *Id.* at 593-94. Plaintiff could not identify the manufacturer of the precise DES ingested by her mother, but that did not bar her recovery. *Id.* at 595-96.

The *Sindell* court observed that modern society is full of "fungible goods which may harm consumers and which cannot be traced to any specific producer." *Id.* at 610. Thus, the court held that a plaintiff injured by such a good may recover by joining in the action the manufacturers of a "substantial share" of the product that caused the injury, at which point the burden shifts to the defendants to demonstrate that they could not have made the product which injured plaintiff. *Id.* at 612. Each defendant who fails to do so will be held liable for the proportion of the judgment

3

1  represented by its share of the relevant market.  *Id.*  "The resultant 'market share liability' imposed
2  thus 'approximate[s each manufacturer's] responsibility for the injuries caused by its own
3  products.'"  *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1032 (N.D. Cal. 2012)
4  (quoting *Mullen v. Armstrong World Indus., Inc.*, 200 Cal. App. 3d 250, 255 n.6 (1988)).

5      "To date, the 'market share' theory of product liability has been held to reach only
6  'fungible goods,' and in only two narrow categories—'truly generic' goods, which are produced
7  from an identical formula, such as DES, and 'generally fungible' goods such as asbestos products
8  composed of a specific asbestos fiber in a specific percentage."  *Id.* (quoting *Wheeler*, 8 Cal. App.
9  4th at 1156).  In *Wheeler*, the California Court of Appeal concluded that plaintiffs had made a
10  prima facie case for market-share liability where they pled that: 1) they had been exposed to
11  asbestos fibers in brake products; 2) they could not identify the makers of the products because the
12  brake pads were usually worn down, with the brand name obfuscated, when the mechanics were
13  exposed to them; 3) the brake pads were fungible because a pad of a given size could be used on a
14  range of vehicles, regardless of who made it, and the pads made by defendants were all comprised
15  of the same asbestos fiber, and contained a similar percentage of asbestos by weight; and 4) a
16  substantial share of the makers of the products were joined as defendants.  8 Cal. App. 4th at
17  1155-58.  Relying on *Sindell* and *Wheeler*, Plaintiffs allege a fifth cause of action for market-share
18  liability.  Compl. at 13-14.

19      Honeywell here moves to dismiss Plaintiffs' market-share liability claim as to all
20  defendants.  ECF No. 96.  Honeywell's primary argument is that *Wheeler* is no longer good law
21  because it is inconsistent with the California Supreme Court's later decision in *Rutherford v.*
22  *Owens-Illinois, Inc.*, 16 Cal. 4th 953 (1997).  ECF No. 96 at 5-8.  *Rutherford* generally rejected a
23  burden-shifting approach to asbestos personal injury litigation.  *See* 16 Cal. 4th at 974-77.  While
24  *Rutherford* discussed the Court's prior opinion in *Sindell* at length, however, it did not explicitly
25  overrule *Sindell*.  *See id.*  When faced squarely with the question of *Wheeler*'s ongoing vitality
26  post-*Rutherford*, the Court of Appeal deferred, and held only that "the exception approved by this
27  court in *Wheeler* has no application to the factual record made in this case.  We also reach the
28  complementary conclusion that because we are not required to, we do not here decide the

4

contemporary validity of *Wheeler* in circumstances in which it might properly be applicable." *Ferris v. Gatke Corp.*, 107 Cal. App. 4th 1211, 1220 (2003).

The Court agrees with Honeywell's contention, and *Ferris*'s observation, that *Rutherford* potentially casts some doubt on the viability of the *Sindell*/*Wheeler* doctrine. Nonetheless, in the more than 20 years – and countless asbestos cases – since *Rutherford* was decided, the Supreme Court has not overruled *Wheeler* and no California appellate court has explicitly rejected it. "When the state supreme court has not ruled definitively on a point, this court looks to decisions by intermediate appellate state courts for guidance." *State Farm Fire & Cas. Co. v. Abraio,* 874 F.2d 619, 621 (9th Cir. 1989) (citation omitted). The district court should follow a California intermediate appellate court's decision "unless there is *convincing evidence* that the state supreme court would decide differently." *Id.* (emphasis added). Honeywell offers nothing beyond speculation regarding *Wheeler*'s fate in the California appellate courts. And, while it is hardly dispositive, it is worth noting that courts from other jurisdictions, including their highest courts, continue to treat *Wheeler* as having vitality post-*Rutherford. See, e.g.*, *Thomas ex rel. Gramling v. Mallett*, 701 N.W.2d 523, 562 (Wis. 2005) (discussing how similar products must be in order to be "fungible" under *Wheeler* and *Sindell*); *Black v. Abex Corp.*, 603 N.W.2d 182, 190-91 (N.D. 1999) (same). Thus, this Court must follow *Wheeler* in the absence of convincing evidence that the California Supreme Court would rule differently.

That conclusion, however, does not resolve the motion, because the Court concludes that Plaintiffs have not successfully pled a *Wheeler* claim in their first amended complaint. As Honeywell argues in the alternative, Plaintiffs' description of "asbestos-containing motor vehicle friction products" as the source of Mr. Farris's injuries does not identify the goods at issue with sufficient specificity to plausibly assert fungibility, as required to make out a market-share liability claim. ECF No. 96 at 8-10; *see* Compl. at 13-14.

Plaintiffs respond that "[p]leading exposure to specific products or even specific furnished products is not a requirement to state a products liability claim." ECF No. 103 at 3. This argument misses the mark in several respects. First, Honeywell has moved to dismiss only Plaintiffs' market-share liability claim, not their standard products liability claims. *See* ECF No.

5

96 at 2. Moreover, to plead a market-share liability claim under *Sindell* and *Wheeler*, Plaintiffs must plead exposure to certain products that are sufficiently similar as to make them "fungible." *See Sindell*, 26 Cal. 3d at 595, 610; *Wheeler*, 8 Cal. App. 4th at 1155-56. Plaintiffs are correct that requiring them to "specifically identify[] a device by reference to a specific product line or model number, without the benefit of discovery, could create an insurmountable pleading burden." ECF No. 103 at 3 (quoting *Coleman v. Boston Sci. Corp.*, No. 1:10-CV-01968-OWW-SKO, 2011 WL 1532477, at *3 (E.D. Cal. 2011)). But here, as Honeywell points out, Plaintiffs have not identified the type of products at issue with any specificity whatsoever, despite several opportunities to do so. ECF No. 106 at 5. Plaintiffs claim that the first amended complaint "identifies the dates, location and *products at issue* for automobile exposure." ECF No. 103 at 3 (citing Compl. at 5) (emphasis added). But nowhere in any of Plaintiffs' filings is there a more specific description than "asbestos-containing motor-vehicle friction products" of the products for which they allege Friction Defendants should share market-share liability. *See, e.g.*, Compl. at 13. This stands in contrast to *Wheeler*, where plaintiffs offered to prove that the specific products at issue – brake pads – "were fungible to the extent that a pad of a given size, regardless of who made it, could be used on a variety of different vehicles. Furthermore, they note[d] that the pads manufactured by defendants were all composed solely of chrysotile asbestos fiber. Finally, the brake pads all contained between 40 and 60 percent asbestos by weight." 8 Cal. App. 4th at 1156. There, the Court of Appeal concluded that brake pads "are fungible for the purposes of *Sindell* by virtue of containing roughly comparable quantities of the single asbestos fiber, chrysotile." *Id.*

Here, Plaintiffs make no allegations as to what, specifically, they mean by "friction products." While the complaint alleges that Mr. Farris has worked on brakes and clutches, the fifth cause of action does not even identify the categories of automotive parts at issue at that broad level. *Compare* Compl. at 5 *with id.* at 13-14. Nor does it include any information about the types of asbestos fiber present in the "friction products," or what quantities of asbestos they contain. Instead, the complaint alleges merely that Mr. Farris was injured by exposure to "asbestos fibers released from asbestos-containing motor vehicle friction products that are and were fungible in color, size, shape, texture and function. Said products were indistinct and similar in appearance

6

and composition, and through no fault of the plaintiff these products cannot be traced to a particular defendant or other entity." Compl. at 13. Plaintiffs cite no case, and the Court has found none, holding that a plaintiff may plead a market-share liability claim without identifying the specific type of product just by conclusorily alleging that the relevant products are "fungible."

Accordingly, the Court will GRANT Honeywell's motion to dismiss the fifth cause of action for failure to state a claim of market-share liability.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Honeywell's motion to dismiss Plaintiffs' market-share liability claim as to all defendants without prejudice. Plaintiffs may amend their complaint within thirty days.

**IT IS SO ORDERED.**

Dated: December 5, 2018



JON S. TIGAR
United States District Judge