UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY FARRIS, et al., <br>     Plaintiffs, <br> v. <br> 3M COMPANY, et al., <br>     Defendants. | Case No. 18-cv-04186-JST <br><br> **ORDER GRANTING SECOND MOTION TO DISMISS FIFTH CAUSE OF ACTION FOR MARKET SHARE LIABILITY** <br><br> Re: ECF No. 137 |

Before the Court is Defendant Honeywell International Inc. ("Honeywell")'s second motion to dismiss Plaintiffs' fifth cause of action for market-share liability. ECF No. 137. The Court will grant the motion without prejudice.

## I. BACKGROUND

Plaintiff Gary Farris was diagnosed with lung cancer in February 2016 after being previously diagnosed with asbestosis. ECF No. 119 ("SAC") at 3. Farris identifies three periods of asbestos exposure over the course of his career. *Id.* at 5-6. He and his wife, Plaintiff Melva Farris, bring claims for strict products liability, market-share liability, negligence, and fraud against three groups of defendants they deem the Product Defendants, Respirator Defendants, and Friction Defendants. *See generally id.* Plaintiffs' allegations are set forth in greater detail in the Court's order granting Honeywell's first motion to dismiss the fifth cause of action. ECF No. 115.

The motion now before the Court deals with Farris's assertion that he was exposed to asbestos while working on brakes and clutches in an automotive shop in San Jose, California during the summers from 1960 to 1964 and while performing automotive repairs for himself, family, and friends from the 1960s to 1980s. SAC at 5. Based on this exposure, Farris pleads various claims against the Friction Defendants (Honeywell; BorgWarner Morse TEC LLC;

1  Maremont Corporation; O'Reilly Auto Enterprises, LLC; and Pneumo Abex, L.L.C). *See id.* at 4-5. In the first amended complaint, Plaintiffs' fifth cause of action for market-share liability asserted that the Friction Defendants are liable for Plaintiff's damages according to their share of the market for "asbestos-containing motor vehicle friction products," because Mr. Farris was exposed to asbestos fibers released from those products, but, through no fault of his own, cannot trace the products at issue to a certain defendant. ECF No. 46 at 13-15. Honeywell moved to dismiss this claim. ECF No. 96. The Court granted the motion, holding that Plaintiffs failed to plausibly plead that the goods at issue were fungible. ECF No. 115 at 5. Later that day, Plaintiffs filed the second amended complaint, supplementing their contentions as to the fifth cause of action. SAC at 12-15.

Honeywell now again moves to dismiss Plaintiffs' fifth cause of action for market-share liability against itself and the other Friction Defendants, arguing that Plaintiffs continue to fail to plead this claim with sufficient particularity in their second amended complaint. ECF No. 137.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted).

In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Dismissal

2

1  under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or
2  sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*,
3  521 F.3d 1097, 1104 (9th Cir. 2008). If the motion to dismiss is granted, the court should grant
4  leave to amend "unless it determines that the pleading could not possibly be cured by the
5  allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal
6  quotation marks and citation omitted).

### III. DISCUSSION

Plaintiffs' fifth cause of action is based on *Sindell v. Abbott Laboratories*, 26 Cal. 3d 588 (1980) and *Wheeler v. Raybestos-Manhattan*, 8 Cal. App. 4th 1152 (1992). SAC at 12, 15. *Sindell* established a burden-shifting "market-share" theory of tort liability, applicable in cases where a plaintiff has been injured by a fungible good that cannot be traced to a specific producer. 26 Cal. 3d at 610-11; *Magallanes v. Superior Court*, 167 Cal. App. 3d 878, 884, 213 Cal. Rptr. 547, 550-51 (1985). A plaintiff injured by such a good may bring suit against the manufacturers of a "substantial share" of the good, shifting the burden to the defendants to demonstrate that they could not have made the product that injured the plaintiff. *Id.* at 612. Each defendant who fails to do so is then held liable for the proportion of the judgment represented by its share of the relevant market. *Id.* This theory of liability applies only to "fungible goods," including "'truly generic' goods, which are produced from an identical formula, . . . and 'generally fungible' goods such as asbestos products composed of a specific asbestos fiber in a specific percentage." *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1032 (N.D. Cal. 2012) (quoting *Wheeler*, 8 Cal. App. 4th at 1156).

*Wheeler* elucidated the requirements to plead a market-share liability claim when injured by a "generally fungible" good. 8 Cal. App. 4th at 1155-58. There, the plaintiff mechanics stated a prima facie case for market-share liability where they pled that: 1) they had been exposed to asbestos fibers in brake products; 2) they could not identify the makers of the products because the brake pads were usually worn down, with the brand name obfuscated, when the mechanics were exposed to them; 3) the brake pads were fungible because a pad of a given size could be used on a range of vehicles, regardless of who made it, and the pads made by defendants were all comprised

3

of the same asbestos fiber, and contained a similar percentage of asbestos by weight; and 4) a substantial share of the makers of the products were joined as defendants. *Id.*

Plaintiffs' first amended complaint alleged that Mr. Farris was injured by exposure to "asbestos fibers released from asbestos-containing motor vehicle friction products that are and were fungible in color, size, shape, texture and function. Said products were indistinct and similar in appearance and composition, and through no fault of the plaintiff these products cannot be traced to a particular defendant or other entity." ECF No. 46 at 13. The Court granted Honeywell's first motion to dismiss because Plaintiffs failed to identify what kinds of products they were referring to (e.g., brakes or clutches), what type or types of asbestos fiber were present in those products, or what quantities of asbestos existed within them. ECF No. 115 at 6-7. Instead, Plaintiffs simply conclusorily alleged that the products in question were fungible. *Id.* at 7. To remedy the deficiencies identified in the Court's prior order, Plaintiffs have added two paragraphs to their second amended complaint. *Compare* SAC at 12-15 *with* ECF No. 46 at 13-15.

Plaintiffs' first new paragraph identifies Honeywell, Maremont Corporation, O'Reilly Auto Enterprises, LLC, and Pneumo Abex, L.L.C as manufacturers and/or distributors of "asbestos drum and disc brake linings." SAC ¶ 20. It asserts that Mr. Farris "was exposed to asbestos from the installation and removal of brake linings." *Id.* "These brake linings were fungible to the extent that a brake lining of a given size and shape, regardless of who made it, could be used on a variety of different vehicles." *Id.* Plaintiffs plead that the brake pads manufactured by the specified defendants "were all composed solely of chrysotile asbestos fiber" and "all contained between 40 and 60 percent asbestos by weight." *Id.* While Plaintiffs acknowledge that new brake linings can be traced to a particular source through markings on the packaging and the product itself, "brake linings removed from a vehicle generally cannot be traced to a specific producer" because they are nearly identical in color, interchangeable with other linings of the same size and shape, and "any markings on the linings are abraded away from their use." *Id.* Plaintiffs allege that "[a] substantial share" of the makers of brake linings for passenger cars and light trucks have been joined as defendants. *Id.* Finally, they plead that "[b]oth

4

Honeywell and Abex had a substantial portion of the market share for brake linings for original equipment manufacturers of vehicles in the United States at the time [Mr.] Farris worked with brake linings." *Id.*

Plaintiffs' second new paragraph alleges that Borgwarner Morse TEC LLC and O'Reilly Auto Enterprises, LLC are manufacturers and/or distributors of "asbestos clutch facings for manual clutches." SAC ¶ 21. As with brakes, Plaintiffs claim that Mr. Farris "was exposed to asbestos from the installation and removal of clutches." *Id.* Again, they assert that the clutch facings were fungible because a facing of a certain size and shape could be used on a range of vehicles, that the facings were composed solely of chrysotile, and that the facings contained between 40 and 60 percent asbestos by weight. *Id.* Plaintiffs allege that, like brake linings, clutch facings can be identified by manufacturer when they are new, but not when they are old and worn down. *Id.* Plaintiffs also allege that "[a] substantial share" of the makers of clutch facings for passenger cars and light trucks have been joined as defendants. *Id.* Finally, Plaintiffs note that "Louis Merz, Borg Warner's corporate representative, has testified that Borg Warner had more than 50% of the new clutch facing market from 1973 to 1981 and that it was more likely than not that an original clutch facing removed" from a Ford, Chrysler, or General Motors vehicle at that time was manufactured by Borg Warner. *Id.*

Honeywell argues that Plaintiffs' amendments have only partially cured the deficiencies identified in the Court's prior order dismissing the market-share liability claim, and that fatal problems remain in the complaint. ECF No. 137 at 2. First, Honeywell urges that Plaintiffs have not plausibly pled that they have joined a "substantial share" of the makers of the offending products. *Id.* at 5. According to Honeywell, Plaintiffs must specifically allege that they have joined manufacturers constituting at least 51% of the relevant market. *Id.* at 7-8. Second, Honeywell argues Plaintiffs must plead that Mr. Farris was primarily exposed to brake pads during removal, rather than installation, to bring this case within the ambit of *Wheeler*. *Id.* at 8-10. Third, Honeywell insists that even after amending the complaint, Plaintiffs continue to fail to plausibly allege that the brake linings in question were fungible. *Id.* at 10-11.

In response, Plaintiffs concede that they need to conduct discovery on the issue of market

5

share, and that, once fact discovery is complete, there may be insufficient facts to establish market-share liability. ECF No. 147 at 1. However, Plaintiffs insist that at the pleading stage, there is no requirement that they identify a specific percentage of market share held by each defendant in order to sufficiently plead "substantial share." *Id.* Similarly, Plaintiffs urge that there is no requirement in the case law that they plead brake removal as Mr. Farris's primary source of asbestos exposure. *Id.* at 2. Finally, Plaintiffs assert that they have plausibly pled fungibility by identifying the products at issue (brakes and clutches), the type and percentage of asbestos fiber in those products, and a physical description of the products including their shape, color, and use within an automobile. *Id.*

Honeywell's first argument in favor of dismissal is unavailing. The *Wheeler* court considered and rejected the argument that Plaintiffs must prove that they have joined makers of a specific percentage of the relevant products on the market at the time of injury to plead a market-share liability claim. *See Wheeler*, 8 Cal. App. 4th at 1158; *id.* at 1156 (observing that "Plaintiffs asserted, without specifying an exact percentage, that they had joined" a substantial share of the manufacturers at issue). The *Wheeler* court held that because the issue arose on nonsuit, "we need only inquire whether plaintiffs offered to prove that the defendants named constituted a substantial share of such makers. They did. Whether they can prove that is another matter." *Id.*

Under California law, a defendant may move for nonsuit at trial after the plaintiffs have completed their opening statement or presented their evidence. Cal. Civ. Proc. Code § 581c(a). "The granting of a motion for a nonsuit is warranted when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." *Keller v. Pac. Turf Club*, 192 Cal. App. 2d 189, 190 (1961). Similarly, in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072.

Here, Plaintiffs have alleged that they have "joined as defendants a substantial share of the

6

manufacturers and suppliers of the asbestos-containing motor vehicle friction products that comprised the relevant market within which [Mr. Farris] was exposed to asbestos fibers." SAC at 15. More specifically, they allege that they have joined a substantial share of the makers of brake linings and clutch facings for passenger cars and light trucks at the relevant time. *Id.* at 13-14. Plaintiffs offer to prove the respective market share of each defendant at trial, and they allege that "[t]he liability of the defendants, and each of them, is proportional to their respective market share percentage." *Id.* at 15. Finally, Plaintiffs assert that "the nature and structure of the market" is such that "there is and was a substantial likelihood that [Mr. Farris] would have actually used or otherwise been exposed to the asbestos-containing motor vehicle friction products of each of the defendants." *Id.* Based on these assertions, the Court holds that Plaintiffs have sufficiently pled joining a "substantial share" of the relevant market to survive a Rule 12(b)(6) motion, although they have not identified the specific percentage of the market controlled by each defendant.

Honeywell's third argument also fails. After amending their complaint, Plaintiffs have plausibly pled fungibility as set forth in *Wheeler*: they have identified the specific automobile friction products at issue, described those products as physically interchangeable, and specified the type and percentage of asbestos fiber present in those products. *Compare Wheeler*, 8 Cal. App. 4th at 1156, *with* SAC at 13-15.

Honeywell's second argument, however, is significantly stronger. Plaintiffs assert that Mr. Farris was exposed to asbestos during the installation and removal of brake linings and clutches, without specifying whether his primary exposure was while installing friction products or removing them. SAC at 13-14. Honeywell is correct that the allegation of primary exposure during removal was critical to the holding in *Wheeler*. *See* ECF Nos. 137 at 8-10, 148 at 6-7; *see also Wheeler*, 8 Cal. App. 4th at 1157 (observing that "the brake pads which caused the risk were already unidentifiable at the time plaintiffs were exposed to their asbestos fibers" because their identifying markings were worn down from use). In *Wheeler*, the plaintiffs' ability to identify some of the manufacturers of the new brake pads they installed did not preclude their market-share liability claim "because plaintiffs alleged that the 'vast majority' of their exposure to brake dust came from used brake pads which were unidentifiable at the time because their trade names and

7

trademarks had been worn off." 8 Cal. App. 4th at 1157. Without similarly pleading that Mr. Farris's primary exposure to brake linings and clutches containing asbestos was while removing them, Plaintiffs' market-share liability claim cannot survive.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Honeywell's second motion to dismiss Plaintiffs' market-share liability claim as to all Friction Defendants. Because the complaint could conceivably be cured by the allegation of additional facts, the Court will again dismiss the fifth cause of action without prejudice. *See Doc*, 58 F.3d at 497. Plaintiffs may amend their complaint within thirty days.

**IT IS SO ORDERED.**

Dated: April 29, 2019

_____
JON S. TIGAR
United States District Judge